## EXHIBIT "C"

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.    Defendant Siemens Logistics And Assembly Systems, Inc. (f/k/a Siemens Dematic Corp.) designs, manufactures, and installs state of the art material handling systems.

2.    In February of 1999, Defendant contracted with Inacom to design and build a $2.9 million dollar material handling system in a facility Inacom leased in Indianapolis, Indiana. The contract was designated No. 43-0524.

3.    On May 10, 1999, Defendant contracted to produce and supply 2000 totes in connection with the Indianapolis project under contract No. 43-0545.

4.    On March 22, 2000, Inacom paid $539,752.24 (the "Transfer") to cover four invoices, all connected with the Indianapolis project and issued under Contracts No. 43-0524 and No. 43-0545, as follows:

> $437,545.53 was paid against invoice 430524;
> $33,967.50 was paid against invoice 43545 B;
> $33,967.50 was paid against invoice 43545 C;
> $33,967.50 was paid against invoice 43545 D.

5.    Pursuant to the express terms of the parties' February 1999 contract, the $437,545.53 payment on invoice 430524 was due "net 15 days" after "completion of installation." Installation was not completed until March 1, 2000 according to the "Project Complete Confirmation" signed by Inacom's representatives. The payment was, accordingly, made within the invoice terms and the ordinary business terms set forth in Contract No. 43-0524 and is not avoidable under 11 U.S.C. § 547..

6.    The shipment of the totes under contract No. 43-0545 did not begin until January 9, 2000. Defendant issued three separate invoices, each in the amount of $33,967.50, for the totes. Invoice 430545 B, was issued on January 6, 2000. Invoice 430545 C and Invoice 430545 D were dated February 24, 2000.

7.    It is common practice for Defendant to issue invoices as milestones in a project and where a payment (as was the case here) turns on completion or other customer approval, Defendant may reissue the invoice, often more than once, as issues are settled with the customer.

8.    On February 15, 2000, Inacom, without any notice to Defendant, sold the Indianapolis facility, including Defendant's equipment, to Custom Edge, a Compaq subsidiary.

9.    The parties agreed that Michigan law would apply to the Contracts.

10.    Under applicable state law, MCLA 570.1121(1) et seq., Defendant held a right to a mechanic's lien in both the property upon which the improvements were made and in the improvements themselves. That was true as a matter of law whether the property, personal or real, was owned by Inacom or some other party, since a construction lien is *in rem*. As a consequence, the Inacom/Custom Edge sale had no impact whatsoever on Defendant's lien rights.

11.    Defendant has a practice of recording and foreclosing on construction liens in general and Defendant would have perfected its lien and foreclosed had Inacom not paid the balance of the purchase price. When Inacom paid Defendant in March of 2000, Defendant released those rights.

12.    Under the Michigan Builder Trust Fund Act, MCLA 570.151 et seq., funds paid in connection with a construction project are held in trust for the benefit of contractors, materialmen, and suppliers. The purpose of the statute is to protect those whose labor and materials make the performance of a contract possible and give rise to the owner's obligation to pay. Funds paid to materialmen for materials supplied on a project are not property of the contractor, but are instead held in trust for the benefit of materialmen and suppliers on the

project. As a consequence, payment of such funds is not a transfer of property of the estate and cannot be reached as a preference.

13.    The March Payment constituted construction trust funds which were held in trust by Inacom for Defendant's benefit and thus are not avoidable preferences.

14.    The Transfer was made in the ordinary course of business or financial affairs of the Debtors and Defendant pursuant to 11 U.S.C. § 547(c)(2)(B) and was made according to ordinary business terms pursuant to 11 U.S.C. § 547(c)(2)(C). Accordingly, the Transfer is not avoidable under 11 U.S.C. § 547.

15.    The Transfer did not constitute a transfer of property of the estate pursuant to 11 U.S.C. § 541, because the funds were trust funds held for the benefit of Defendant and other contractors pursuant to the Michigan Builders Trust fund Act. Accordingly, the Transfer is not avoidable under 11 U.S.C. § 547.

16.    Defendant's release of its mechanic's lien claim constituted "new value" pursuant to 11 U.S.C. § 547(a)(2).

17.    Defendant's release of its mechanic's lien claim was intended to be a contemporaneous exchange for new value and was, in fact, a contemporaneous exchange pursuant to 11 U.S.C. § 547(c)(1). Accordingly, the Transfer is not avoidable under 11 U.S.C. § 547.

18.    Defendant's release of its mechanic's lien constituted "new value to or for the benefit of the debtor pursuant to 11 U.S.C. § 547(c)(4)." Accordingly, the Transfer is not avoidable under 11 U.S.C. § 547.

19.    Defendant held or holds statutory lien rights, including mechanic's lien rights under applicable state law, to secure payment of Inacom's obligations. Defendant's lien rights,

and all transfers made in satisfaction of such liens, are unavoidable pursuant to 11 U.S.C. §
547(c)(6).